# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HAIRL WILHELM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DR. ARON ROTMAN,<br><br>　　　　Defendant.<br>_____/ | Case No. 1:10-cv-00001 DLB PC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>(Document 73)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SURREPLY AND STRIKING SURREPLY<br>(Documents 80 and 81) |

Plaintiff Steven Hairl Wilhelm ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 31, 2009.[1] The action is proceeding on Plaintiff's March 15, 2011, First Amended Complaint against Defendant Rotman for violation of the Eighth Amendment.

On June 2, 2015, Defendant Rotman filed the instant motion for summary judgment. After receiving an extension of time, Plaintiff filed his opposition on July 14, 2015. Defendant filed his reply on July 24, 2015. The motion is suitable for decision pursuant to Local Rule 230(l).

## I.    MOTION TO STRIKE SURREPLY

On August 6, 2015, Plaintiff filed an "opposition to Defendant's Reply Submitted July 24, 2015." Defendant filed a motion to strike the filing as an unauthorized surreply on August 10, 2015.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on February 3, 2010. Defendant Rotman filed his consent on October 20, 2014.

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The Court generally views motions for leave to file a surreply with disfavor. Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

The Court has reviewed Plaintiff's surreply. The twenty-two page memorandum of points and authorities is an exact copy of the memorandum in support of his July 14, 2015, opposition, and many of the attached exhibits are also duplicates. Insofar as Plaintiff attempts to respond to Defendant's reply to the statement of undisputed facts, the Court does not need further argument to determine which facts are disputed.

Accordingly, Defendant's motion to strike is GRANTED and Plaintiff's surreply (Document 80) is STRICKEN from the docket.

## II.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on July 15, 2008, he was examined by Defendant Rotman, who diagnosed him with a double hernia. Plaintiff was scheduled to see a surgeon.

Plaintiff saw the surgeon on September 5, 2008, and the surgeon told Plaintiff that he did not have a hernia and that an operation was not necessary.

Plaintiff submitted a medical request to see Defendant Rotman on September 8, 2008, but Plaintiff was not called in for the appointment. On October 12, 2008, Plaintiff sent Defendant Rotman a letter explaining that he needed to be seen regarding his hernia. On October 21, 2008, he received a ducat for an appointment with Defendant Rotman, but he was not called for the appointment.

Plaintiff received a second ducat on October 26, 2008, for an appointment with Defendant Rotman, but he was not called for the appointment.

On November 11, 2008, Plaintiff saw Defendant Rotman and asked for testing to determine if he had a hernia. Defendant Rotman told Plaintiff that the tests would not show anything and that they would discuss the hernia at Plaintiff's next appointment.

Plaintiff received a ducat to see Defendant Rotman on December 4, 2008, but he was not called in for the appointment. He sent another letter to Rotman on December 7, 2008, and did not receive a response.

On December 11, 2008, Plaintiff submitted a medical request to see Defendant Rotman. On December 19, 2008, Plaintiff received a ducat to see an R.N. instead of Defendant Rotman. However, he was not called in for the appointment.

Plaintiff saw Defendant Rotman on December 24, 2008, and he told Plaintiff that he would be examined for a hernia at his next appointment, set for January 21, 2009.

On January 27, 2009, Plaintiff returned to Defendant Rotman, who told Plaintiff that he would place him on the list to see a surgeon at Bakersfield Hospital.

On March 26, 2009, Plaintiff saw Defendant Rotman and asked why he had not been to the surgeon yet. Defendant Rotman told him to be patient.

On July 17, 2009, Plaintiff had an interview for a 602 appeal he had filed about his hernia and the length of time it was taking to see a surgeon. During the interview, he was told by the interviewer that he had been taken off the surgeon list because Defendant Rotman failed to file the correct papers, and then failed to "re-file" the correct papers. ECF No. 12, at 5.

Plaintiff was eventually scheduled for surgery.

### III.   **LEGAL STANDARD**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mutual Inc. v. U.S</u>., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

3

parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

///
///
///
///

## IV.   UNDISPUTED MATERIAL FACTS[2]

Between February 2006 and approximately November 2011, Plaintiff was incarcerated at the California Substance Abuse Treatment Facility ("CSATF"). Pl.'s Dep. 13:6-10 (attached to Whitney Decl. at Ex. P). He was housed in Facility E, Building 3. Pl.'s Dep. 13:13-10.

Defendant Dr. Rotman is a physician licensed to practice medicine in the State of California. He is board certified in internal medicine by the American Board of Internal Medicine. Rotman Decl. ¶ 1. Defendant Rotman was employed as a medical doctor by the California Department of Corrections and Rehabilitation from May 2008 through December 2009, and worked as a Primary Care Physician ("PCP") at CSATF during that time. Rotman Decl. ¶ 2. As a PCP at CSATF, Defendant Rotman's duties included providing medical care for inmates in the clinic of the facility to which he was assigned. Rotman Decl. ¶ 4.

At various times during the time period at issue, Defendant Rotman worked in the E Facility medical clinic, where he saw Plaintiff. Rotman Decl. ¶ 3; Pl.'s Decl. 13:24-14:1.

As a PCP, Defendant Rotman could only request that an inmate-patient be referred for a specialty or outside medical treatment. Rotman Decl. ¶ 5; Pl.'s Dep. 30:7-9.[3]

Once a request was made, the Utilization Committee, comprised of the CMO and other physicians, would decide whether to approve or deny the requested referral. Rotman Decl. ¶¶ 5, 28; Pl.'s Dep. 30:18-20. Defendant Rotman was not on the Utilization Committee at any time relative to the Requests for Surgery Consult he submitted concerning Plaintiff's hernia. Rotman Decl. ¶¶ 5, 28. Defendant Rotman had no authority to send Plaintiff for a surgery referral on his

---

[2] Plaintiff submits a declaration in support of his opposition, but he does not set forth any facts. Rather, he refers the Court to his verified complaint.

[3] During his deposition, Plaintiff admitted that "all [Defendant] could do was make the request to refer [Plaintiff] out for surgery," and that he had no part in deciding whether the request was approved or not. Pl.'s Dep. 30:7-12. In attempting to dispute this fact, Plaintiff argues that this was not "all" Defendant could do. Plaintiff suggests that as a PCP, it was his professional duty to make phone calls to the Chief Medical Officer ("CMO"), or any other person, to ensure that prescribed treatment was not provided in timely manner. He suggests as much during his deposition, stating that he "assumed" that if he did see a specialist in a timely manner, Defendant Rotman could call the CMO. Pl.'s Dep. 30:21-25. However, Plaintiff's assumption as to what else Defendant Rotman *could have* done does not render the original fact in dispute.

5

own. Pl.'s Dep. 30:13-15.[4] Defendant Rotman had no part in deciding whether a referral was approved by the CMO or not. Pl.'s Dep. 30:10-12.[5]

If the Utilization Committee granted the referral request, the inmate would be scheduled for an appointment with a specialist. As a PCP, Defendant Rotman had no involvement with the specialist appointment scheduling. Rotman Decl. ¶ 6. After consultation with a specialist, the specialist would make a determination of what care should be afforded to the inmate-patient, and the Utilization Committee would then make a decision to decline or accept the specialist's recommendations. The PCP did not make this determination. Rotman Decl. ¶ 7.

Plaintiff first saw Defendant Rotman concerning his hernia in the E Facility Clinic at SATF on July 15, 2008. After an examination, he diagnosed Plaintiff with a bilateral inguinal hernia. Rotman Decl. ¶ 10, Ex. A; Pl.'s Dep. 33:10-24, Ex. 6. On July 15, 2008, the first time Defendant Rotman saw Plaintiff regarding his hernia, Defendant Rotman requested a referral for Plaintiff to see a surgeon. Rotman Decl. ¶ 11, Ex. A; Pl.'s Dep. 34:15-36:5. The request was approved by the CMO, Dr. Enenmoh, on July 28, 2008. Rotman Decl. ¶ 12, Ex. B.

On September 4, 2008, Plaintiff saw Defendant Rotman for, among other things, pain in his groin from an inguinal hernia. At that time, Defendant Rotman followed up on his July 15, 2008, request for surgery referral. Rotman Decl. ¶ 13, Ex. C and D; Pl.'s Dep. 37:17-20, Ex. 7.

Plaintiff saw the surgeon, Dr. Schuster, the next day, September 5, 2008. Rotman Decl. ¶ 14, Ex. E; Pl.'s Dep. 38:14-39:6, Ex. 6 and 8. Dr. Schuster's medical findings were "no definite hernia." Rotman Decl. ¶ 14, Ex. B; Pl.'s Dep. 19:19-21, 39:7-11, Ex. 6 and 8.

Plaintiff next saw Defendant Rotman on January 27, 2009, complaining of a lump in his groin and pain. Defendant Rotman made a second request to refer Plaintiff for surgery for his

---

[4] Plaintiff attempts to dispute this fact by again arguing that Defendant Rotman "could have contacted" the CMO and informed him of Plaintiff's urgent need for surgery. As noted above, what Defendant Rotman *could have* done does not dispute the fact that he did not have independent authority to send Plaintiff for a referral. Plaintiff admitted this during his deposition. The fact remains undisputed.

[5] Plaintiff again attempts to dispute this fact by arguing that Defendant Rotman "could have contacted" the CMO and informed him of Plaintiff's urgent need for surgery. This does not dispute the fact that Defendant Rotman is not involved in approving referrals. The fact remains undisputed.

hernia. Rotman Decl. ¶ 16, Ex. G and H; Pl.'s Dep. 20:4-14, 41:16-43:8, Ex. 10.[6]

Defendant Rotman's January 27, 2009, request was denied by the Utilization Committee. Rotman Decl. ¶ 18; Pl.'s Dep. 20:15-21:1.

Defendant Rotman was never advised that the January 27, 2009, request was denied because he submitted incorrect paperwork, nor does he believe that the paperwork that he submitted was deficient in any way. If he had submitted incorrect paper, he would have been informed and it would have been documented. There are no medical records in Plaintiff's medical files documenting that Defendant Rotman's request was denied because of incorrect paperwork. Rotman Decl. ¶ 18.[7]

Plaintiff next saw Defendant Rotman on February 4, 2009. Defendant Rotman diagnosed Plaintiff with a hernia, and his treatment plan was a referral for surgery. Rotman Decl. ¶ 19, Ex. I; Pl.'s Dep. 43:11-44:11, Ex. 11.

The last time Defendant saw Plaintiff concerning his hernia was March 26, 2009, when Defendant Rotman again diagnosed a hernia and made a third request for surgery. Rotman Decl. ¶ 20, Ex. J and K; Pl.'s Dep. 21:22-22:4, 32:3-8, 44:14-45:19, Ex. 12.

On July 6, 2009, Dr. S. Ramen examined Plaintiff's abdomen. Dr. Ramen determined that the condition had resolved and there was "no evidence of hernia." Rotman Decl. ¶ 21, Ex. L; Pl.'s Dep. 22:12-23:2; 24:12-17, 45:4-22, 47:5-48:3, Ex. 4 and 13. Also on July 6, 2009, Dr. Ramen ordered the cancellation of Defendant Rotman's March 26, 2009, referral request. Rotman Decl. ¶ 22, Ex I. Pl.'s Dep. 25:9-21.

///

///

///

---

[6] Plaintiff attempts to dispute this by arguing this was his next appointment only because Defendant Rotman failed to see Plaintiff on October 21, 2008, October 26, 2008, and December 4, 2008, all appointments for which he had a ducat but was not called. He also argues that Defendant Rotman did not respond to his letters sent on October 12, 2008, October 22, 2008, and December 7, 2008. These additional facts do not dispute the fact that Defendant Rotman next saw Plaintiff on January 27, 2009. The fact remains undisputed.

[7] In "disputing" this fact, Plaintiff questions why Defendant Rotman submitted a new referral request in March 2009 if, as he says, he was not informed of the denial. Plaintiff's question is not a fact, and Defendant Rotman's fact remains undisputed.

1    Defendant Rotman did not discuss with Dr. Ramen, or have input into, his decision to
2 cancel the March 26, 2009, request. Rotman Decl. ¶ 21.[8]

3    On August 3, 2009, Plaintiff was seen by a Physician's Assistant ("PA"), who noted that
4 Plaintiff said he had a bilateral inguinal hernia for four years. Plaintiff also stated that three
5 medical doctors told him that he has hernias, but a surgeon told him that he did not. The PA noted
6 that a left hernia was not detected. A request for surgical consult was made. Rotman Decl. ¶ 23,
7 Ex. M.

8    Plaintiff was seen at the surgery clinic on August 19, 2009, for evaluation of an inguinal
9 hernia. He was found to have a bilateral inguinal hernia and surgical repair was recommended.
10 Rotman Dec. ¶ 24, Ex. N.

11    A request for services for general surgery was made by the physician on August 26, 2009,
12 which was approved by the Utilization Committee on August 31, 2009. Rotman Decl. ¶ 25, Ex.
13 O.

14    Plaintiff had hernia repair surgery on October 1, 2009. Rotman Decl. ¶ 26, Ex. O; Pl.'s
15 Dep. 32:9-11.

16    When an inmate requested a medical appointment, staff on the inmate's yard would make
17 the decision about who would receive a ducat, and if that ducat would be honored on the day for
18 which it was issued. Staff on the yard would also decide if and when the inmate-patient would be
19 rescheduled if the inmate was not called on a particular day. Rotman Decl. ¶ 29.

20    Plaintiff does not have copies of letters that he alleges he sent to Defendant Rotman, and
21 there are none in his medical records. Pl.'s Dep. 6:5-16, 48:22-49:12.[9]

22 ///

---

[8] Plaintiff states that there is no evidence that Defendant "did or did not" speak with Dr. Ramen. However, Plaintiff is incorrect. Defendant Rotman's statement in his declaration that he did not do so is evidence of the fact. To the extent that Plaintiff calls Defendant Rotman's declaration "self-serving," Defendant Rotman is entitled to defend himself in this action, and in support of his defense, he may submit a declaration, made under penalty of perjury, of facts within his personal knowledge.

[9] Plaintiff disputes this fact, arguing that he does not have any control over what documents go into his medical file. This is irrelevant to the fact that the letters are not in his medical file, and the fact remains undisputed. He also argues that while it is possible that Defendant Rotman did not see the letters, it is also possible that he did see them and denied it in a self-serving declaration. Plaintiff's arguments are without merit.

8

In the period of time during which Plaintiff saw Defendant Rotman, from July 15, 2008, through March 26, 2009, Defendant Rotman put in three requests for a referral to a surgeon. Pl.'s Dep. 51:23-52:3. From the time that Plaintiff was first diagnosed with a hernia in October 2005, at Lancaster State Prison, until Defendant Rotman saw him in 2008, no other medical provider made a referral for surgery. Defendant Rotman was the first to do so. Pl.'s Dep. At 52:18-53:9.

## V.  DISCUSSION

### A.  Eighth Amendment Legal Standard

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

///
///
///

B.   Analysis[10]

The following facts are undisputed. Plaintiff saw Defendant Rotman three times, and each time, Defendant Rotman requested a surgical referral. The first request was approved on July 28, 2008. Plaintiff saw the specialist on September 5, 2008, after Defendant Rotman followed-up on his request. The specialist determined that there was no evidence of a hernia.

Defendant Rotman made a second request for a surgical consult on January 27, 2009. The request was denied by the Utilization Committee. Defendant Rotman was never told that he submitted incorrect paperwork for the request, nor was any such information placed into Plaintiff's medical file. Defendant Rotman believed that he had submitted proper paperwork.

Defendant Rotman submitted a third request on March 26, 2009. This was Plaintiff's last visit with Defendant Rotman.

Plaintiff saw Dr. Ramen on July 6, 2009. Dr. Ramen determined that there was no evidence of a hernia, and cancelled Defendant Rotman's March 26, 2009, request.

Plaintiff saw a PA on August 3, 2009, and although there was no evidence of a hernia, the PA requested a surgical consult.

Plaintiff ultimately underwent hernia repair surgery on October 1, 2009.

Based on these facts, Defendant has carried his burden of showing an absence of evidence to support Plaintiff's claim that he was deliberately indifferent to Plaintiff's serious medical need. Defendant Rotman saw Plaintiff three times, and each time, he requested a surgical consult. The first request was approved, and Plaintiff saw a surgeon after Defendant Rotman followed up on his request. The surgeon ultimately determined that Plaintiff did not have a hernia, and Defendant Rotman had no input in this decision. The second request was denied, but Defendant Rotman was not told that it was denied because of incomplete paperwork, and he believed that he had submitted a proper request. Defendant Rotman made a third request three months later, though the request was ultimately cancelled after Dr. Ramen determined that there was no evidence of a hernia.

///

---

[10] There is no dispute that Plaintiff had a serious medical need.

10

The burden now shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). As noted above, this requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

Plaintiff first argues that although Defendant Rotman requested referrals for surgical consults, he "failed to follow up on those referrals. . ." ECF No. 78, at 22. Plaintiff contends that he failed to receive the prescribed treatment (surgery) for over one year, and suggests that the delay was the result of Defendant Rotman's failure to ensure that Plaintiff received the prescribed treatment. ECF No. 78, at 23. In this regard, Plaintiff argues that Defendant Rotman submitted improper paperwork, "purposefully ignored, refused to see" him on three occasions and failed to respond to various letters. ECF No. 78, at 25.

As to the denial of his January 27, 2009, request, it is undisputed that Defendant Rotman did not know that he submitted improper paperwork. Plaintiff's suggestions to the contrary are based on nothing but assumptions and speculations. For example, Plaintiff states that it is "hard to believe" that the Utilization Committee would not inform the requesting doctor of the denial. ECF No. 78, at 25. Plaintiff's questioning, however, is not evidence to show that Defendant Rotman knew that the denial was based on incorrect paperwork.

Moreover, even if the paperwork was incorrect, there is no evidence that he submitted the paperwork with the requisite state of mind, which entails more than an ordinary lack of due care.[11] Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citations omitted). Plaintiff suggests that Defendant Rotman "does not have any evidence to suggest that he did not deliberately fill out incorrect paperwork." However, it is Plaintiff's burden, not Defendant's, to put forth evidence

///

---

[11] The parties argue about the admissibility of letters Plaintiff received from the Prison Law Office, dated August 11, 2009, and May 15, 2015. Opp'n, Ex. B. The August letter indicates that in response to an inquiry as to why the January 2009 request was denied, the Prison Law Office was told that it was denied because the information provided was inadequate. The May 2015 letter states that an individual in the Prison Law Office received this information from a lawyer who worked in the CDCR Legal Affairs Unit. These letters are not relevant to the discussion, however, and the Court will not rule on admissibility issues.

11

showing a dispute of a material fact.  In any event, as the Court noted above, Defendant Rotman's declaration is evidence that he did not know that he submitted improper paperwork.

Plaintiff next argues that Defendant Rotman purposely failed to call him for three appointments- October 21 and 26, 2008, and December 4, 2008.  Plaintiff alleges that on these dates, he received a medical ducat to see Defendant Rotman, and though he was called out to medical, Defendant Rotman did not call him for any of these appointments.  The parties dispute which staff member is responsible for calling an inmate to a medical appointment, but even if, as Plaintiff suggests, Defendant Rotman was responsible for calling Plaintiff, there is no evidence of deliberate indifference.

According to Plaintiff, the doctors decide which inmate to see, "depending on the seriousness of the inmate's medical issue. . ." ECF No. 78, at 16.  Plaintiff does not explain why he believes that Defendant Rotman failed to call him, or why he believes that Defendant Rotman acted with deliberate indifference.  Indeed, when asked if he knew whether Defendant Rotman told staff not to call him, Plaintiff responded, "[a]pparently so" because he believed that Defendant Rotman made such decisions.  Plaintiff also admitted that he never actually heard Defendant Rotman tell staff not to call Plaintiff.  Pl.'s Dep. 50:24-51:4.  Plaintiff's speculation is not sufficient to create a dispute of fact.

Similarly, Plaintiff argues that Defendant Rotman was deliberately indifferent for failing to respond to three letters that he sent regarding medical treatment and/or appointments.  He contends that he sent letters on October 17 and October 22, 2008, and December 7, 2008.  As evidence that he sent the letters, Plaintiff points to Exhibit E, attached to his opposition.  Exhibit E is a "medical log book" that Plaintiff kept showing that he sent these three letters to Defendant Rotman on the dates indicated.  There appears to be a dispute as to whether Defendant Rotman ever received the letters.

Nonetheless, even assuming that he did, <u>Jett v. Penner</u>, 439 F.3d 1091 (9th Cir. 2006), there is no evidence that Defendant Rotman knowingly disregarded a serious risk of harm to Plaintiff's health in failing to respond.  Both before and after the letters, Defendant Rotman took the same course of action- he requested surgery.  In fact, Defendant Rotman was the only

12

physician from July 2008 through July 2009 to diagnose a hernia and request surgery. In September 2008, just prior to Plaintiff sending the alleged letters, Plaintiff was seen by a specialist and no evidence of a hernia was found. Although Defendant Rotman's January 2009 request was denied, his March 2009 request was ultimately cancelled because, as late as July 2009, a doctor determined that he did not have a hernia. Under these facts, Plaintiff cannot demonstrate that Defendant Rotman, even if he received the letters, was deliberately indifferent.

The Court also notes that the fact that Plaintiff later had surgery does not allow him to question prior doctors' medical treatment. Where there is a difference of opinion between an inmate and a physician, or between medical professionals, Plaintiff must show that the course of treatment the doctors chose was "medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted). Given the undisputed facts of this case, Plaintiff cannot show that Defendant Rotman's treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to Plaintiff's health. This is especially true where Defendant Rotman was the *only* physician, through July 2009, requesting the course of treatment that Plaintiff believed he needed.

Plaintiff's allegation that Defendant Rotman should have done more to ensure that he received the "prescribed treatment" is predicated upon his disagreement with the *other* doctors' determinations, determinations over which Defendant Rotman had no control.

The Court therefore finds that Plaintiff has failed to carry his burden of demonstrating the existence of a genuine dispute of material fact. Defendant Rotman is entitled to summary judgment in his favor on all claims.

///
///
///
///
///
///

**<u>ORDER</u>**

Based on the above, Defendant Rotman's motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendant Rotman on all claims.

<u>This terminates this action in its entirety.</u>

IT IS SO ORDERED.

Dated: **September 15, 2015**          /s/ *Dennis L. Beck*
                              UNITED STATES MAGISTRATE JUDGE